IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D

FEB 2 3 2007

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:07MJ161 |
| | ) | |
| CHARLES RUST-TIERNEY, | ) | |
| | ) | |
| Defendant | ) | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Robert J. Abrams, being duly sworn, depose and state:

1. Your affiant Robert Abrams is a Special Agent with U.S. Immigration and Customs Enforcement (formerly US Customs and hereafter ICE), currently assigned to the Office of the Special Agent in Charge, Washington, D.C. (SAC/DC). Special Agent (SA) Abrams investigates crimes relating to the sexual exploitation of children. SA Abrams has been an agent since 2003 and has basic, advanced, and on-the-job training in this investigative area. SA Abrams is ICE's representative to the Northern Virginia and District of Columbia Internet Crimes Against Children (ICAC) Task Force. SA Abrams has participated in and led federal, multi-jurisdictional, and international investigations and has been the affiant on search warrants in several federal judicial districts and on criminal complaints. SA Abrams is a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program, the ICE Special Agent Training program and the ICE Child Exploitation Undercover Investigations Training Program. Your affiant is responsible for enforcing federal criminal statutes involving the sexual

exploitation of children pursuant to Title 18 United States Code, Sections 2251, 2252, and 2252A.

2. This affidavit is being made in support of a criminal complaint for Charles Rust-Tierney, a resident of Arlington, Virginia, which is in the Eastern District of Virginia. Because this affidavit is being made for the limited purpose of supporting a criminal complaint, not each and every fact known to Your Affiant is being included.

## PERTINENT FEDERAL CRIMINAL STATUTES

3. Title 18, United States Code, Section 2252A, entitled "Certain activities relating to material constituting or containing child pornography," provides, in pertinent part:

(a) Any person who –

(1) knowingly mails, or transports or ships in interstate or foreign commerce by any means, including by computer, any child pornography;

(2) knowingly receives or distributes –
any child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or
any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer;

(3) knowingly reproduces any child pornography for distribution through the mails, or in interstate or foreign commerce by any means, including by computer;

. . . .

(5)(B) knowingly possesses any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer,

2

shall be punished as provided in subsection (b).

4. Title 18, United States Code, Section 2256 defines the term "minor" as any person under the age of eighteen years.

5. Title 18, United States Code, Section 2256(8) defines "Child Pornography" as "any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where – (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; . . . [or] (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct." For conduct occurring after April 30, 2003, the definition also includes "(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from that of a minor engaging in sexually explicit conduct."

6. Title 18, United States Code, Section 2256(2) defines "sexually explicit conduct" as actual or simulated:

    (a)    Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

    (b)    Bestiality;

    (c)    Masturbation;

    (d)    Sadistic or masochistic abuse; or

    (e)    Lascivious exhibition of the genitals or pubic area of any person.

3

7. Title 18, United States Code, Section 2256(5) defines "visual depiction" as including undeveloped film and videotape, and data stored on computer disk or by electronic means that is capable of conversion into a visual image.

## BACKGROUND OF THE INVESTIGATION

8. Beginning in or around October 2005, U.S. Immigration and Customs Enforcement (ICE) agents began investigating a commercial website which will be referenced hereinafter as a child pornography website. The child pornography website provided paid subscriptions to child pornography.

9. Federal court orders from the U.S. District Court in New Jersey authorized interception of electronic communications involving an email account associated with the child pornography website. Individuals purchasing access to the child pornography website were provided passwords and login instructions after the subscriber's payment was verified. In most instances, payment was by credit card for $79.99 for 20 days access to the child pornography website.

10. On or about February 10, 2006, ICE agents intercepted an e-mail transmitted from a Hotmail email Account to another email account net in an apparent request to verify the credit card and other information submitted by various individuals who sought subscriptions to a child pornography website. This data was included in an attachment to the e-mail that ICE agents were able to decode using commercially available software. Among those individuals seeking access to the website was an individual who listed his name as Charles RUST-TIERNEY. He provided an address in Arlington, Virginia. He listed his e-mail address charlesrust-tierney@msn.com. He provided a credit card number of xxxx-xxxx-xxxx-2482. The credit card number provided was subsequently

4

verified as assigned to Charles Rust-Tierney.  He also provided a telephone number that was subsequently verified as assigned to Charles Rust-Tierney at the same mailing address provided during the application for access to the child pornography website.  The email account identified by the subscriber was an MSN email account subsequently identified as subscribed to by Charles Rust-Tierney.  Charles Rust-Tierney was authorized access to the child pornography website for 20 days.

11.  In or about February and March 2006, ICE agents conducted an examination of a web server seized on or about February 1, 2006 and again on March 2, 2006.  During this examination, agents located log files indicating that the individual controlling the e-mail address charlesrust-tierney@msn.com accessed numerous images of child pornography from the child pornography website.  For example, three of the images accessed by the individual controlling charlesrust-tierney@msn.com are described as follows:

   a.   Image 1 -- This image, which was accessed by charlesrust-tierney@msn.com on January 15, 2006, at approximately 5:00 p.m., depicts a naked, prepubescent female on her hands and knees.  Her genitals and buttocks are clearly visible.

   b.   Image 2 -- This image, which was accessed by charlesrust-tierney@msn.com on January 15, at approximately 5:00 p.m., depicts a naked, prepubescent female with her knees bent and legs spread.  Her genitals are clearly visible.

   c.   Image 3 -- This image, which was accessed by charlesrust-tierney@msn.com on January 15, 2006, at approximately 5:00 p.m., depicts a naked, prepubescent female lying on her left side.  Her knees are bent and her genitals and anus are clearly visible.

12.  Subscribers to the child pornography website suffered a disruption in their service during February 2006, when the website was being moved to alternate servers to

avoid law enforcement detection.  As a result, the website operators offered affected customers free access to a child pornography video of their choice from an archive contained on the child pornography website.

13.  On February 18, 2006, Charles RUST-TIERNEY sent an e-mail from his account charlesrust-tierney@msn.com to the Hotmail email Account requesting access to the child pornography video of his choice.  He wrote:  "in reply to you [sic] offer for a free archive, please send archive 71.  my login is crust11.  thank you."

14.  On or about February 19, 2006, an e-mail was sent from the Hotmail email Account to charlesrust-tierney@msn.com providing a hyperlink and password information to access the "archive 71" file.

15.  On or about August 1, 2006, ICE agents received subpoenaed credit card billing records of Charles RUST-TIERNEY from January 1, 2005 to August 1, 2006. Those records indicate that Charles RUST-TIERNEY'S credit card, which has a credit card number of xxxx-xxxx-xxxx-2482, had been billed in the amount of $79.99 by a known child pornography provider on or about January 14, 2006.  This credit card number matches the one provided to the operators of the child pornography website by Charles RUST-TIERNEY.

16.  In addition, there is an identical charge to this credit card account on February 10, 2006.  Based on your affiant's knowledge, training and experience, this indicates that RUST-TIERNEY purchased a subscription to the child pornography website on or about January 10, 2006, and then purchased a renewal subscription to the child pornography website on or about February 10, 2006.  Furthermore, representatives of MBNA America were asked, by way of subpoena, to include any reports of fraud or

6

abuse relating to this account when providing the monthly statements. No reports of fraud or abuse were indicated.

17. Federal investigations into the operations of other commercial child pornography websites have revealed that Charles RUST-TIERNEY has subscribed to multiple child pornography websites over a period of years.

18. For instance, federal agents learned that between, on or about March and April 2, 2005, Charles RUST-TIERNEY subscribed to a group of members-only, child pornography websites.

19. By reviewing access records and subscriber information seized during a search of the servers that hosted these websites and their payment processors, federal agents determined that Charles RUST-TIERNEY paid $79.95 per month, during March and April 2005, to purchase access to the member-only, child pornography websites noted above. To do so, RUST-TIERNEY submitted the following personal information to the payment processing websites: his full name, e-mail address (charlesrust-tierney@msn.com), a residential address at the SUBJECT PREMISES, his home telephone number, and a credit card number of xxxx-xxxx-xxxx-7765.

20. Also through other investigations into suspected commercial child pornography websites, ICE agents have learned that Charles RUST-TIERNEY purchased access to a website that sells suspected child pornography videos on or about: September 24, 2005, November 17, 2005; and December 4, 2005. Each purchase was for approximately $150.00.

21. Charles RUST-TIERNEY's subscriptions to commercial child pornography websites also have continued subsequent to his January and February 2006 subscriptions to the child pornography website.

22. On or about October 13, 2006, Charles RUST-TIERNEY purchased access to a group of hardcore commercial child pornography websites.

23. Using his credit card -- account number xxxx-xxxx-xxxx-2482 -- Charles RUST-TIERNEY purchased access to these websites through a Paypal account. The transaction, which posted to Charles RUST-TIERNEY's credit card account on October 16, 2006, was in the amount of $99.95.

24. On or about October 29, 2006, Charles RUST-TIERNEY again purchased access to commercial child pornography websites using the same Bank of America credit card account as he used for his October 13, 2006 purchase. This October 29, 2006 purchase was made through a Paypal account. The transaction, which was in the amount of $99.95, posted to Charles RUST-TIERNEY's Bank of America credit card account on October 31, 2006.

25. On or about February 9, 2006, ICE agents, using commercially available software, determined that the specific originating IP address from which Charles RUST-TIERNEY submitted his subscription application to the child pornography website -- is controlled Verizon.

26. On or about February 9, 2006, representatives of Verizon confirmed that the e-mail address of charlesrust-tierney@msn.com is subscribed to and assigned to Charles Rust-Tierney's residence.

27. On February 23, 2007, at approximately 6:15 am, ICE Agents with the

SAC/DC, with the assistance of officers and detectives of the Arlington Police

Department, executed a federal search warrant at the residence of Charles Rust-Tierney,

located in Arlington, Virginia. This search warrant was issued by the Hon. Barry R.

Poretz, United States Magistrate Judge for the Eastern District of Virginia. The search

warrant allowed your affiant and any authorized officers of the United States to search

for and seize the evidence, fruits, and instrumentalities of the willful and knowing

possession and receipt, in interstate commerce, of child pornography.

28. Contemporaneous to the search of the residence of Charles Rust-Tierney,

your Affiant and Detective Chris Feltman conducted a non-custodial interview of Rust-

Tierney at his residence. Rust-Tierney was identified by name and later by driver's

license. During the interview, Rust-Tierney admitted that he downloaded videos and

images from child pornography websites onto CD-Rom disks. Rust-Tierney directed

search agents to three CD-ROM disks located in a dresser drawer in the master bedroom.

One disk was labeled Scratched Do Not Use. That disk contained approximately thirty

child pornography video files. One of those videos depicts a prepubescent girl engaged

in forceable sexual intercourse with apparent vaginal penetration with an adult male in

which the child can be seen and heard crying. Another of the disks contains a

compilation of a known, prepubescent female being forced to engage in sexually explicit

conduct. The third disk contains a video file depicting a prepubescent female who is

being forceably digitally penetrated while her arms are bound by rope extending her arms

above her head.

29. At approximately 11:00 am on February 23, 2007, your affiant placed Charles Rust-Tierney under arrest based on the probable cause that Charles Rust-Tierney knowingly and willfully possessed and received child pornography in violation of Title 18, United States Code § 2252A.

30.   During the course of a non-custodial interview, Charles Rust-Tierney stated that he coaches various youth sport teams in and around Arlington County.

31.   Based on the above information, I respectfully submit that there is probable cause to believe that Title 18, United States Code, Section 2252A, which makes it a federal crime for any person to knowingly receive and possess child pornography, as defined in Title 18, United States Code, Section 2256(8)(a), that has been mailed, or has been shipped or transported in interstate or foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer, or knowingly reproduce any visual depiction for distribution in interstate or foreign commerce by any means including by computer or through the mails, has been violated by Charles Rust-Tierney.

Robert J. Abrams, Special Agent
Immigration and Customs Enforcement

SUBSCRIBED TO AND SWORN TO
BEFORE ME THIS 23 DAY
OF FEBRUARY 2007

_____/s/_____
Barry R. Poretz
United States Magistrate  Judge

10